**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| AISLYN KRENNING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELTA DENTAL OF MISSOURI,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

# CLASS ACTION COMPLAINT

1. Plaintiff Aislyn Krenning ("Plaintiff") brings this class action, individually and on behalf of all other similarly situated individuals whose information was compromised in the cyberattack described herein (the "Class" or "Class Members"), against Defendant Delta Dental of Missouri ("Defendant") for its failure to properly secure and safeguard Plaintiff's and Class Members' Protected Health Information ("PHI") and personally identifiable information ("PII") (together "Private Information") stored within Defendant's information network.

## INTRODUCTION

2. Defendant is the state's dental benefits leader, with more than 2.37 million members who are covered through more than 3,400 companies, both large and small, as well as through individual plans purchased directly from Delta Dental of Missouri.[1]

3. Defendant acquired, collected, and stored Plaintiff's and Class Members' Private Information.

[1] *About Us*, Delta Dental of Missouri, https://www.deltadentalmo.com/AboutUs (last visited Nov. 11, 2026).

4. At all relevant times, Defendant knew or should have known that Plaintiff and Class Members would use Defendant's services to store and share sensitive data, including highly confidential Private Information.

5. On November 5, 2026,[2] *Becker's Dental Review* reported that the cybercriminal hacking group "n0n" had claimed responsibility for a suspected data breach involving Defendant (the "Data Breach"). Defendant told *Becker's* that it was aware of a posting by a purported threat actor, had initiated an investigation, and had engaged independent forensic specialists. Defendant also stated that its systems and services remained operational and its investigation was ongoing. In that statement, Defendant did not confirm the date that the unauthorized third-party cybercriminals gained access or the extent to which Plaintiff's and Class Members' Private Information hosted with Defendant was now compromised. Upon information and belief, that Private Information is now in the hands of third parties who intend to misuse it, including by marketing and selling it.

6. The total number of individuals who have had their data exposed due to Defendant's failure to implement appropriate security safeguards is unknown at this time but is estimated to be in the tens of thousands based on Defendant's clientele.

7. Protected Health Information ("PHI") is a category of information that refers to an individual's medical records and history, which is protected under the Health Insurance Portability and Accountability Act ("HIPAA"), which may include test results, procedure descriptions, diagnoses, personal or family medical histories and data points applied to a set of demographic information for a particular patient.

---

[2] Ariana Portalatin, *Ransomware Group Claims Responsibility for Delta Dental of Missouri Data Breach*, Becker's Dental Rev. (Nov. 5, 2026), https://www.beckersdental.com/revenue-cycle-management/ransomware-group-claims-responsibility-for-delta-dental-of-missouri-data-breach/.

8. Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, and is generally defined to include certain identifiers that do not on their face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).

9. Because of Defendant's Data Breach, at least the following types of Plaintiff's and Class Members' Private Information may have been compromised:[3]

a. Member and subscriber names;

b. Social Security numbers;

c. Dates of birth;

d. Home addresses; and

e. Dental treatment information.

10. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' Private Information was safeguarded, failing to take available steps to prevent unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use.

11. As a result, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party that seeks to profit off this disclosure by defrauding Plaintiff and Class Members in the future.

[3] *See supra* note 2.

12. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are thus entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

13. Jurisdiction is proper in this Court under 28 U.S.C. § 1332. Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d)(2) and (d)(5)(B) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed Class, and at least one Class Member is a citizen of a state different from Defendant.

14. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

15. This Court has personal jurisdiction over Defendant because Defendant is headquartered in, and routinely conducts business in, the State of Missouri, has sufficient minimum contacts in this State, and has intentionally availed itself of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within this State.

16. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)–(2) because Defendant resides in this District, a substantial part of the events that gave rise to Plaintiff's claims occurred within this District, and Defendant does business in this Judicial District.

## RELATED CASE

17. Plaintiff is aware of one related action pending in this District that arises from the same Data Breach and asserts claims against the same Defendant on behalf of an overlapping putative class: *Eschenbacher v. Delta Dental of Mo.*, No. 4:26-cv-01922-JSD (E.D. Mo. filed Nov. 6, 2026). In accordance with Local Rule 2.02, Plaintiff has identified that action as related on the Original Filing Form submitted with this Complaint.

## THE PARTIES

**Plaintiff Aislyn Krenning**

18. Plaintiff Aislyn Krenning is an adult individual and, at all relevant times herein, a resident and citizen of Missouri, residing in Union, Missouri. Upon information and belief, Plaintiff is a victim of the Data Breach.

19. Plaintiff received dental benefits from Defendant as a covered dependent under a group dental plan that Defendant provided through her husband's employer. Plaintiff's Private Information was stored with Defendant as a result of that coverage.

20. To enroll Plaintiff in that plan and administer her dental benefits, Defendant obtained Plaintiff's highly sensitive PHI and PII—directly and through her husband's employer—including, upon information and belief, her name, Social Security number, date of birth, and home address. Defendant then possessed and controlled that information.

21. As a result, and upon information and belief, Plaintiff's information was among the data accessed by an unauthorized third party in the Data Breach.

22. Upon information and belief, at all times herein relevant, Plaintiff is and was a member of the Class.

23. As a result, Plaintiff was injured in the form of lost time dealing with the consequences of the Data Breach, which included and continues to include: time spent verifying the legitimacy and impact of the Data Breach; time spent exploring credit monitoring and identity theft insurance options; time spent self-monitoring her accounts with heightened scrutiny; and time spent seeking legal counsel regarding her options for remedying and/or mitigating the effects of the Data Breach.

24. Plaintiff was also injured by the material risk of future harm she suffers based on

Defendant's breach; this risk is imminent and substantial because, upon information and belief, Plaintiff's data was exposed in the breach; the data involved, including Social Security numbers and healthcare information, is highly sensitive and presents a high risk of identity theft or fraud; and it is likely, given Defendant's clientele, that some of the Class's information that has been exposed has already been misused.

25. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that she entrusted to Defendant, which was compromised in and as a result of the Data Breach.

26. Plaintiff, as a result of the Data Breach, has increased anxiety for her loss of privacy and anxiety over the impact of cybercriminals accessing, using, and selling her Private Information.

27. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information, in combination with her name, being placed in the hands of unauthorized third parties and criminals.

28. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Defendant Delta Dental of Missouri**

29. Defendant Delta Dental of Missouri is a nonprofit corporation incorporated in Missouri, with its principal place of business at 1400 S Highway Drive, Suite 200, Fenton, Missouri 63099-2281.

30. Defendant's registered agent is Rhonda Graack, and she may be served at 1400 S Highway Drive, Suite 200, Fenton, Missouri 63099-2281.

31. Defendant is a 501(c)(4) nonprofit organization and is part of the Delta Dental Plans Association, a national network of independent Delta Dental companies.[4]

32. Defendant began as Missouri Dental Service, which was founded in 1958 to expand access to dental care in Missouri. Missouri Dental Service moved its operations from Jefferson City to St. Louis in 1979, changed its name to Delta Dental Plan of Missouri in 1985, and later changed its name again to Delta Dental of Missouri. Defendant holds an active license issued by the Missouri Department of Commerce and Insurance.[5]

33. Defendant offers group dental plans to employers of all sizes, individual and family dental plans, and vision benefits marketed under the DeltaVision® brand. According to Defendant, its members have access to the 88 percent of practicing dentists in Missouri who participate in one or both of its networks—the Delta Dental PPO™ network and the Delta Dental Premier® network.[6]

34. To enroll members, administer benefits, and process claims, Defendant collects and maintains the Private Information of its members and subscribers, including their names, Social Security numbers, dates of birth, and home addresses, and, upon information and belief, their dental treatment information.[7]

35. Defendant and its wholly owned subsidiary, Advantica Insurance Company, issue a joint Notice of Privacy Practices to members of their insured benefit plans. In the section titled "Our Responsibilities," that notice, effective July 1, 2026, makes the following representations:[8]

---

[4] *Supra note 1.*
[5] *Id.; Delta Dental of Missouri*, Mo. Dep't of Com. & Ins., https://insurance.mo.gov/insurance-company/delta-dental-missouri (last visited Nov. 11, 2026).
[6] *Supra note 1.*
[7] *See infra* note 9.
[8] Delta Dental of Mo. & Advantica Ins. Co., *Notice of Privacy Practices* 2 (effective July 1, 2026), https://www.deltadentalmo.com/PrivacyHipaa.

a. "We are required by law to maintain the privacy and security of your protected health information";

b. "We will promptly let you know if a breach occurs that may have compromised the privacy or security of your information";

c. "We will not use or share your information other than as described in this notice without first obtaining your written authorization"; and

d. "We are required to follow the terms of this notice as currently in effect and provide you with a copy of it."

36. Defendant's separate privacy notice under the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801–6809, likewise acknowledges that the personal information Defendant collects "can include" members' "Social Security Number," "[i]nsurance claim history and medical information," and demographic information "such as address, date of birth, or dependent information." In that notice, Defendant represents: "To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."[9]

## COMMON FACTUAL ALLEGATIONS

### Defendant's Failed Response to the Breach

37. Defendant has not provided Plaintiff with notice confirming whether her Private Information was compromised in the Data Breach.

38. Plaintiff therefore remains without information from Defendant concerning the specific data potentially affected, the circumstances of its exposure, or the measures being taken

[9] Delta Dental of Mo. & Advantica Ins. Co., *Facts: What Does Delta Dental Do with Your Personal Information?* 1–2 (rev. July 2026).

to protect her Private Information.

39. Upon information and belief, the unauthorized third-party cybercriminals gained access to Plaintiff's and Class Members' Private Information with the intent of engaging in the misuse of the Private Information, including marketing and selling Plaintiff's and Class Members' Private Information.

40. Defendant had and continues to have obligations created by HIPAA, applicable federal and state law as set forth herein, reasonable industry standards, common law, and its own assurances and representations to keep Plaintiff's and Class Members' Private Information confidential and to protect such Private Information from unauthorized access.

41. Plaintiff and Class Members were required to provide their Private Information to Defendant, directly or through their employers or family members, to receive dental benefits, and in furtherance of this relationship, Defendant created, collected, and stored Plaintiff's and Class Members' Private Information with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

42. Despite this, Plaintiff and the Class Members remain, even today, in the dark regarding what particular data was stolen, the particular malware used, and what steps are being taken, if any, to secure their Private Information going forward.

43. Plaintiff and Class Members are, thus, left to speculate as to where their Private Information ended up, who has used it, and for what potentially nefarious purposes, and are left to further speculate as to the full impact of the Data Breach and how exactly Defendant intends to enhance its information security systems and monitoring capabilities to prevent further breaches.

44. Upon information and belief, unauthorized individuals can now easily access the

Private Information of Plaintiff and Class Members.

**Defendant Collected and Stored Class Members' Private Information**

45. Defendant acquired, collected, stored, and assured reasonable security over Plaintiff's and Class Members' Private Information.

46. As a condition of providing dental benefits to Plaintiff and Class Members, Defendant required that Plaintiff and Class Members—directly or through their employers or family members—entrust Defendant with highly sensitive and confidential Private Information.

47. Upon information and belief, Defendant, in turn, stored that information in the part of Defendant's system that was ultimately affected by the Data Breach.

48. By obtaining, collecting, and storing Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was thereafter responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

49. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

50. Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

51. Defendant could have prevented the Data Breach by adequately securing and encrypting and/or more securely encrypting its servers generally, as well as Plaintiff's and Class Members' Private Information.

52. Defendant's negligence in safeguarding Plaintiff's and Class Members' Private Information is exacerbated by repeated warnings and alerts directed to protecting and securing

sensitive data, as evidenced by the trending data breach attacks in recent years.

53. Yet, despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Plaintiff's and Class Members' Private Information from being compromised.

**Defendant Had an Obligation to Protect the Stolen Information**

54. Defendant's failure to adequately secure Plaintiff's and Class Members' sensitive data breaches duties it owes Plaintiff and Class Members under statutory and common law. Under HIPAA, health insurance providers have an affirmative duty to keep members' Protected Health Information private. As a covered entity, Defendant has a statutory duty under HIPAA and other federal and state statutes to safeguard Plaintiff's and Class Members' data. Moreover, Plaintiff and Class Members surrendered their highly sensitive personal data to Defendant under the implied condition that Defendant would keep it private and secure. Accordingly, Defendant also has an implied duty to safeguard their data, independent of any statute.

55. Because Defendant is covered by HIPAA, 45 C.F.R. § 160.102, it is required to comply with the HIPAA Privacy Rule, 45 C.F.R. pt. 160 and pt. 164, subpts. A, E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. pt. 160 and pt. 164, subpts. A, C.

56. HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for protecting health information.

57. HIPAA's Security Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

58. HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of the Security Rule "with respect to electronic protected health information." 45 C.F.R. § 164.302.

59. "Electronic protected health information" means information within paragraphs (1)(i) or (1)(ii) of the definition of protected health information, covering transmission by electronic media or maintenance in electronic media. 45 C.F.R. § 160.103.

60. HIPAA's Security Rule, 45 C.F.R. § 164.306(a)(1)–(4), requires Defendant to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

61. HIPAA also requires Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information" under 45 C.F.R. § 164.306(e), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

62. Moreover, the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400–.414,

requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 calendar days after discovery of a breach." 45 C.F.R. § 164.404(b).

63. The Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. § 45(a)(1), which is enforced by the Federal Trade Commission (the "FTC"), also prohibited Defendant from engaging in "unfair or deceptive acts or practices in or affecting commerce."[10]

64. In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

65. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Plaintiff and Class Members.

66. Defendant owed a duty to Plaintiff and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that the Private Information was adequately secured and protected.

67. Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including not sharing information with other entities who maintained substandard data security systems.

[10] Courts have upheld the FTC's position that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 245–47 (3d Cir. 2015).

68. Defendant owed a duty to Plaintiff and Class Members to implement processes that would immediately detect a breach in its data security systems in a timely manner.

69. Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

70. Defendant owed a duty to Plaintiff and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust this Private Information to Defendant.

71. Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

72. Defendant owed a duty to Plaintiff and Class Members to encrypt and/or more reliably encrypt Plaintiff's and Class Members' Private Information and monitor user behavior and activity in order to identify possible threats.

**Value of the Relevant Sensitive Information**

73. Private Information is a valuable commodity for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on several underground internet websites.

74. Numerous sources cite dark web pricing for stolen identity credentials; for example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200;[11] Experian reports that credit card details can sell for $10 to $240 on the dark web;[12] and other sources report that criminals can also purchase access to entire company

[11] *Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs*, Digital Trends (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[12] Ben Luthi, *Here's What Your Data Sells for on the Dark Web*, Experian (June 30, 2025),

data breaches from $999 to $4,995.[13]

75. Identity thieves can use Private Information, such as that of Plaintiff and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims—for instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

76. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used: according to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

77. Here, Defendant knew of the importance of safeguarding Private Information and of the foreseeable consequences that would occur if Plaintiff's and Class Members' Private Information was stolen, including the significant costs that would be placed on Plaintiff and Class Members as a result of a breach of this magnitude.

78. As detailed above, Defendant is a sophisticated organization with the resources to

---

https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[13] *In the Dark*, VPNOverview (2019), https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Nov. 10, 2026).

[14] U.S. Gov't Accountability Off., GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* 29 (2007), http://www.gao.gov/new.items/d07737.pdf.

deploy robust cybersecurity protocols. It knew, or should have known, that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Plaintiff and Class Members. Therefore, its failure to do so is intentional, willful, reckless and/or grossly negligent.

79. Defendant disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' Private Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

## **CLASS ACTION ALLEGATIONS**

80. Plaintiff brings this action pursuant to Rules 23(a), (b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and the following Class:

> All individuals within the United States of America whose Private Information was exposed to unauthorized third parties as a result of the Data Breach reported in November 2026.

81. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state, or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, councils and/or subdivisions; and all judges assigned to hear any aspect of this

litigation, as well as their immediate family members.

82. Plaintiff reserves the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

83. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation, and membership in the proposed Class is easily ascertainable.

84. Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class are so numerous that joinder of all members is impractical, if not impossible. Defendant provides dental benefits to more than 2.37 million members. And the threat actor that claimed responsibility for the Data Breach has publicly claimed to have obtained Defendant's customer relationship database, including 48,528 distinct email addresses, 17,913 telephone numbers, and member and subscriber records containing full names, Social Security numbers, dates of birth, home addresses, and dental treatment details.[15]

85. Commonality: Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a. Whether Defendant had a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and/or safeguarding their Private Information;

b. Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

c. Whether Defendant's security procedures and practices to protect its

[15] *Victim: Delta Dental of Missouri*, Ransomware.live (Nov. 5, 2026), https://www.ransomware.live/id/RGVsdGEgRGVudGFsIG9mIE1pc3NvdXJpQE4wbg.

systems were reasonable in light of the measures recommended by data security experts;

d. Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

e. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g. How and when Defendant actually learned of the Data Breach;

h. Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the Private Information of Plaintiff and Class Members;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members;

k. Whether Plaintiff and Class Members are entitled to actual damages and/or whether injunctive, corrective and/or declaratory relief and/or accounting is/are appropriate as a result of Defendant's wrongful conduct; and

l. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

86. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendant's common course

of conduct in violation of law, as alleged herein.

87. Adequacy of Representation: Plaintiff in this class action is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

88. Plaintiff is not subject to any individual defenses different from those conceivably applicable to other Class Members or the Class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

89. Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

90. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

91. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

92. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's

conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

93. Unless a Class-wide injunction is issued, Defendant may continue failing to properly secure the Private Information of Class Members, and Defendant may continue to act unlawfully as set forth in this Complaint.

94. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## CLAIMS FOR RELIEF

### COUNT ONE
**Negligence**
**(On behalf of the Class)**

95. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

96. At all times herein relevant, Defendant owed Plaintiff and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their Private Information and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing the Private Information of Plaintiff and Class Members in its computer systems and on its networks.

97. Among these duties, Defendant was expected:

a. to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession;

b. to protect Plaintiff's and Class Members' Private Information using reasonable and adequate security procedures and systems that comply with

industry-standard practices;

c. to implement processes to detect the Data Breach quickly and to timely act on warnings about data breaches; and

d. to promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

98. Defendant knew that the Private Information was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

99. Defendant knew, or should have known, of the risks inherent in collecting and storing Private Information, the vulnerabilities of its data security systems, and the importance of adequate security.

100. Defendant knew about numerous, well-publicized data breaches.

101. Defendant knew, or should have known, that its data systems and networks did not adequately safeguard Plaintiff's and Class Members' Private Information.

102. Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the Private Information that Plaintiff and Class Members had entrusted to it.

103. Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their Private Information.

104. Because Defendant knew that a breach of its systems could damage tens of thousands of individuals, including Plaintiff and Class Members, Defendant had a duty to

adequately protect its data systems and the Private Information contained therein.

105. Plaintiff's and Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions.

106. Moreover, only Defendant had the ability to protect its systems and the Private Information stored on them from attack. Thus, Defendant had a special relationship with Plaintiff and Class Members.

107. Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant, Plaintiff, and/or the remaining Class Members.

108. Defendant breached its general duty of care to Plaintiff and Class Members in, but not necessarily limited to, the following ways:

a. by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members;

b. by failing to timely and accurately disclose that Plaintiff's and Class Members' Private Information had been improperly acquired or accessed;

c. by failing to adequately protect and safeguard the Private Information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information;

d. by failing to provide adequate supervision and oversight of the Private

Information with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Private Information of Plaintiff and Class Members, misuse the Private Information, and intentionally disclose it to others without consent;

e. by failing to adequately train its employees not to store Private Information longer than absolutely necessary;

f. by failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class Members' Private Information;

g. by failing to implement processes to detect data breaches, security incidents, or intrusions quickly; and

h. by failing to encrypt Plaintiff's and Class Members' Private Information and monitor user behavior and activity in order to identify possible threats.

109. Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

110. As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages.

111. The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the Private Information to Plaintiff and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

112. As of the filing of this Complaint, Defendant has not notified Plaintiff whether her

Private Information was affected by the reported Data Breach or identified the specific categories of her information, if any, that were accessed or acquired without authorization.

113. To date, Defendant has not provided sufficient information to Plaintiff and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff and Class Members.

114. Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their Private Information.

115. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm suffered, or risk of imminent harm suffered, by Plaintiff and Class Members.

116. Plaintiff's and Class Members' Private Information was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

117. Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

118. The damages Plaintiff and Class Members have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

119. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the loss of control over how their Private Information is used; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (iv)

lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft; (v) the continued risk to their Private Information, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information in its continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

120. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

121. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

**COUNT TWO**
**Negligence *Per Se***
**(On behalf of the Class)**

122. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

123. Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1), prohibits "unfair or deceptive acts or practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect consumers' sensitive personal information.

124. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and by failing to comply with applicable industry standards, as described herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of a data breach.

125. HIPAA's Security Rule, 45 C.F.R. pt. 164, subpt. C, required Defendant, among other things, to ensure the confidentiality and integrity of the electronic protected health information it maintained, to protect against reasonably anticipated threats to the security of that information, and to implement technical policies and procedures that allow access only to authorized persons. 45 C.F.R. §§ 164.306(a), 164.312(a)(1).

126. Defendant violated HIPAA's Security Rule by failing to implement and maintain those safeguards, as described herein.

127. Plaintiff and Class Members are within the class of persons that Section 5 of the FTC Act and HIPAA's Security Rule were intended to protect: consumers and individuals whose personal and health information is collected and maintained by businesses and covered entities such as Defendant.

128. The harm that Plaintiff and Class Members have suffered is the type of harm that Section 5 of the FTC Act and HIPAA's Security Rule were intended to prevent: the unauthorized access, theft, and misuse of sensitive personal and health information.

129. Defendant's violations of Section 5 of the FTC Act and HIPAA's Security Rule constitute negligence *per se*.

130. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer the injuries described herein, including lost time, loss of privacy, diminution in the value of their Private Information, anxiety and emotional distress, and a substantially increased risk of fraud and identity theft.

**COUNT THREE**
**Breach of Third-Party Beneficiary Contract**
**(On behalf of the Class)**

131. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

132. Defendant entered into contracts with employers and other group plan sponsors, including Plaintiff's husband's employer, under which Defendant agreed to provide dental benefits to the sponsors' employees and their covered dependents (the "Group Contracts").

133. Plaintiff and Class Members who received dental benefits under the Group Contracts—including employees and their covered dependents, such as Plaintiff—are intended third-party beneficiaries of those contracts. The Group Contracts were made for the express purpose of providing dental benefits to them, and, upon information and belief, the Group Contracts identify them as the covered members and dependents entitled to those benefits.

134. To receive benefits under the Group Contracts, Plaintiff and Class Members were required to provide their Private Information to Defendant, directly or through their employers or family members. Defendant solicited and collected that information as part of its regular business practices.

135. Upon information and belief, the Group Contracts required Defendant to safeguard

and protect covered members' and dependents' Private Information, to keep that information secure and confidential, and to comply with HIPAA and other applicable law.

136. Defendant memorialized these obligations in its own privacy notices, which apply to members of Defendant's insured benefit plans. Defendant represented that it is "required by law to maintain the privacy and security of your protected health information," that it protects members' personal information "from unauthorized access and use" through "computer safeguards and secured files and buildings," and that it "will promptly let you know if a breach occurs that may have compromised the privacy or security of your information."[16]

137. The parties to the Group Contracts intended these privacy and security obligations to benefit the covered members and dependents whose Private Information Defendant would collect and maintain, because those individuals—not the plan sponsors—are the persons whose information is at risk and who would be harmed by its unauthorized disclosure.

138. All conditions required for Defendant's performance under the Group Contracts were satisfied, including through the payment of premiums by plan sponsors and, where applicable, by covered employees.

139. Defendant breached the Group Contracts by failing to implement and maintain reasonable security measures to protect Plaintiff's and Class Members' Private Information, by failing to comply with HIPAA's Security Rule as described herein, and by allowing that information to be accessed and exfiltrated in the Data Breach.

140. As a direct and proximate result of Defendant's breaches of the Group Contracts, Plaintiff and Class Members have suffered (and will continue to suffer) (a) the loss of the benefit of their bargain, because the premiums paid by them or on their behalf by their employers or family

[16] *See supra* notes 8–9.

members included payment for reasonable data security that Defendant did not provide; (b) an ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, and the resulting risk of monetary loss and economic harm; (c) loss of the confidentiality of their Private Information; (d) upon information and belief, the sale or offering for sale of their compromised Private Information on the dark web; (e) lost time spent addressing the consequences of the Data Breach; and (f) other economic and non-economic harm.

**COUNT FOUR**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(On behalf of the Class)**

141. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

142. Every contract in this State, including the Group Contracts alleged in Count Three, has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

143. All conditions required for Defendant's performance under those contracts were satisfied, including through the payment of premiums by plan sponsors and, where applicable, by covered employees.

144. Defendant breached the implied covenant of good faith and fair dealing inherent in those contracts by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members, and continuing to accept Private Information and store other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

145. Defendant acted in bad faith and/or with malicious motive in denying Plaintiff and

Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

**COUNT FIVE**
**Unjust Enrichment**
**(On behalf of the Class)**

146. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

147. This claim is pleaded in the alternative to Count Three (Breach of Third-Party Beneficiary Contract) and Count Four (Breach of the Implied Covenant of Good Faith and Fair Dealing), as permitted by Federal Rule of Civil Procedure 8(d)(2)–(3).

148. By its wrongful acts and omissions described herein, Defendant has obtained a benefit by unduly taking advantage of Plaintiff and Class Members.

149. Defendant, prior to and at the time Plaintiff and Class Members entrusted their Private Information to Defendant, caused Plaintiff and Class Members to reasonably believe that Defendant would keep such Private Information secure.

150. Defendant was aware, or should have been aware, that reasonable members and consumers would have wanted their Private Information kept secure and would not have contracted with Defendant, directly or indirectly, had they known that Defendant's information systems were substandard for that purpose.

151. Defendant was also aware that, if the substandard condition of and vulnerabilities in its information systems were disclosed, it would negatively affect Plaintiff's and Class Members' decisions to seek services therefrom.

152. Defendant failed to disclose facts pertaining to its substandard information systems, defects, and vulnerabilities therein before Plaintiff and Class Members made their decisions to make purchases, engage in commerce therewith, and seek services or information.

153. Instead, Defendant suppressed and concealed such information. By concealing and suppressing that information, Defendant denied Plaintiff and Class Members the ability to make a rational and informed purchasing and servicing decision and took undue advantage of Plaintiff and Class Members.

154. Defendant was unjustly enriched at the expense of Plaintiff and Class Members, as Defendant received profits, benefits, and compensation, in part, at the expense of Plaintiff and Class Members; however, Plaintiff and Class Members did not receive the benefit of their bargain because they paid for services—directly or through premiums paid on their behalf by their employers or family members—that did not satisfy the purposes for which they sought them.

155. Since Defendant's profits, benefits, and other compensation were obtained improperly, Defendant is not legally or equitably entitled to retain any of the benefits, compensation, or profits it realized from these transactions.

156. Plaintiff and Class Members seek an Order of this Court requiring Defendant to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by Defendant from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and each member of the proposed Class, respectfully requests that the Court enter judgment in her favor and for the following specific relief against Defendant as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed Class under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), including the appointment of Plaintiff's counsel as Class Counsel under Fed. R. Civ. P. 23(g);

2. For an award of damages, including actual, nominal, and consequential damages,

as allowed by law, in an amount to be determined at trial;

3. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

4. For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an Order:

a. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

b. requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

c. requiring Defendant to delete and purge the Private Information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

d. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' Private Information;

e. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems periodically;

f. requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

g. requiring Defendant to conduct regular database scans and security checks;

h. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities for handling Private Information, as well as protecting the Private Information of Plaintiff and Class Members;

i. requiring Defendant to implement a system of tests to assess its employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting Private Information;

j. requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to monitor Defendant's networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested, and updated; and

k. requiring Defendant to meaningfully educate all Class Members about the threats they face due to the loss of their confidential Private Information to third parties, as well as the steps affected individuals must take to protect themselves.

5. For prejudgment interest on all amounts awarded, at the prevailing legal rate;

6. For an award of attorney's fees, costs, and litigation expenses, as allowed by law; and

7. For all other Orders, findings, and determinations identified and sought in this Complaint.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury for all issues triable by jury.

Dated: November 12, 2026

Respectfully submitted,

*/s/ Grayson Wells*
Grayson Wells
**STRANCH, JENNINGS & GARVEY, PLLC**
Grayson Wells, #73068 (MO)
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
T: (615) 254-8801
gwells@stranchlaw.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

***Pro Hac Vice admission forthcoming***

***Attorneys for Plaintiff and the Proposed Class***